UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

STEVEN R.,

                 Plaintiff,

      v.

COMMISSIONER OF THE SOCIAL
SECURITY ADMINISTRATION,

                 Defendant.

**MEMORANDUM & ORDER**
23-CV-06911 (HG)

**HECTOR GONZALEZ**, United States District Judge:

Plaintiff Steven R.[1] seeks judicial review, pursuant to 42 U.S.C. § 405(g), of the Commissioner of the Social Security Administration's ("SSA") final decision denying his application for disability insurance benefits ("DIB"). *See* ECF No. 1 (Compl.). Before the Court are the parties' cross-motions for judgment on the pleadings. Plaintiff asks this Court to reverse the SSA's decision, while Defendant asks the Court to affirm the SSA's decision denying DIB. For the reasons explained below, Defendant's motion is GRANTED and Plaintiff's motion is DENIED.

## BACKGROUND

Plaintiff first applied for DIB on November 4, 2020, alleging the onset of disability on March 15, 2020, based on: "drop foot,"[2] "status post lumbar microdiscectomy for lumbar herniation," "degenerative disc disease," "spinal stenosis," "scoliosis," "chronic kidney disease,"

---

[1]     Plaintiff's name has been partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States. The Clerk of Court has modified the docket to reflect Plaintiff's abbreviated name.

[2]     Drop foot occurs where a patient "can't raise the front part of [his] foot due to weakness or paralysis of the muscles that lift it." *See Foot Drop*, Cleveland Clinic, https://perma.cc/5ECB-L3R7 (Jan. 16, 2023).

"GERD,"[3] "chronic sinusitis from 9/11," and "severe obstructive sleep apnea."  ECF No. 7 at 10, 51–52 (Administrative Record; "AR").[4]  The SSA initially disapproved Plaintiff's claim on March 3, 2021.  *Id.* at 88–99.  His request for reconsideration of that decision was subsequently denied on August 24, 2021.  *Id.* at 105–09.  Plaintiff then requested a hearing before an SSA Administrative Law Judge ("ALJ"), which took place on March 1, 2022.  *Id.* at 32–50.  At the hearing, Plaintiff was represented by an attorney, and a vocational expert ("VE") also testified.  *Id.* at 32.

On May 19, 2022, the ALJ issued her decision, determining that Plaintiff was not disabled within the meaning of the Social Security Act since March 15, 2020.  *Id.* at 10–19.  The ALJ reached the following conclusions:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2024.
2. The claimant has not engaged in substantial gainful activity since March 15, 2020, the alleged onset date (20 CFR 404.1571 *et seq.*).
3. The claimant has the following severe impairments:  lumbar spine degenerative disc disease with foot drop, status post lumbar microdiscectomy, scoliosis, chronic sinusitis, obstructive sleep apnea (20 CFR 404.1520(c)).
4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except:  he can stand and/or walk with normal breaks for a total for both of 6 hours in an 8-hour workday, sit with normal breaks for 6 hours in an 8-hour workday, cannot perform push/pull or foot control operation with the right lower extremity, can occasionally climb ramps or stairs, and never climb ladders, ropes or scaffolds, can occasionally balance or stoop, and never kneel, crouch or crawl, can tolerate no occasional exposure to

---

[3]   GERD stands for gastroesophageal reflux disease and is the clinical term for chronic acid reflux.  *See Acid Reflux & GERD*, Cleveland Clinic, https://perma.cc/TKH2-62HG (Sept. 28, 2023).

[4]   Citations to ECF cite to the pages assigned by the Electronic Case Files System.  Citations to AR cite to the pages assigned by the Administrative Record.  Unless otherwise indicated, when quoting cases and the AR, all internal quotation marks, alteration marks, emphases, footnotes, and citations are omitted, and all capitalization is normalized.

      pulmonary irritants; and must avoid concentrated exposure to unprotected heights or operating heavy or hazardous equipment.
6. The claimant is capable of performing past relevant work as a Security Guard. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).
7. The claimant has not been under a disability, as defined in the Social Security Act, from March 15, 2020, through the date of this decision (20 CFR 404.1520(f)).

*Id.* at 12–19. The SSA's Appeals Council denied Plaintiff's request for review on July 18, 2023, rendering the ALJ's decision the final decision of the Commissioner. *Id.* at 1–3.

Plaintiff then sought review in this Court by initiating this action on September 18, 2023. *See* ECF No. 1. On February 2, 2024, Plaintiff filed his motion. *See* ECF No. 8. On March 21, 2024, Defendant filed its motion. *See* ECF No. 11. Although the Court provided Plaintiff with an opportunity to file a reply, he did not do so. *See* Mar. 15, 2024, Text Order.

## **LEGAL STANDARD**

When a plaintiff challenges an ALJ's decision as unsupported by substantial evidence, as Plaintiff does here, the Court must "conduct a plenary review of the administrative record" and determine "whether the ALJ applied the correct legal standards and whether the ALJ's determination is supported by substantial evidence." *Rucker v. Kijakazi*, 48 F.4th 86, 90–91 (2d Cir. 2022). "The substantial evidence standard is a very deferential standard of review—even more so than the clearly erroneous standard." *Schillo v. Kijakazi*, 31 F.4th 64, 74 (2d Cir. 2022). But the standard is "not merely hortatory: It requires relevant evidence which would lead a reasonable mind to concur in the ALJ's factual determinations." *Colgan v. Kijakazi*, 22 F.4th 353, 359 (2d Cir. 2022). The Court is therefore "required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Schillo*, 31 F.4th at 74. Once an ALJ has made findings of fact, however, the Court "can reject those facts only if a reasonable factfinder would *have to conclude otherwise*." *Id.* (emphasis in original). Put another way, "[i]f evidence is susceptible to more than one rational interpretation,

3

the Commissioner's conclusion must be upheld." *Id.* Although an ALJ is not required to "reconcile[]" "every conflict in [the] record," the ALJ must describe "the crucial factors in any determination . . . with sufficient specificity to enable [the Court] to decide whether the determination is supported by substantial evidence." *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019).

## DISCUSSION

On appeal Plaintiff raises two issues. First, he argues that the ALJ erred by failing to find Plaintiff's "chronic kidney stones" to be a severe impairment. *See* ECF No. 8 at 6. Second, he takes issue with the ALJ's assessment of his residual functional capacity ("RFC"). *See id.* at 6–7. The Court begins its analysis with a brief discussion of how the ALJ makes a disability determination, including as applied to this case, and then addresses Plaintiff's challenges.

### A.   *Determining RFC and Disability*

ALJs must employ a "five-step sequential evaluation process" to determine whether a claimant is disabled, proceeding through each step until a determination can be reached. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). "The claimant bears the burden of proof in the first four steps . . . ." *Schillo*, 31 F.4th at 70. "In step five, the burden shifts, to a limited extent, to the Commissioner," but the Commissioner "need not provide additional evidence of the claimant's [RFC]" at that stage. *Id.*

At step one, the ALJ considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is performing substantial gainful activity, then the claimant is not disabled. At step two, the ALJ determines whether the claimant suffers from "a severe medically determinable physical or mental impairment" or "combination of impairments" that meets the twelve-month durational requirement. *Id.* § 404.1520(a)(4)(ii) (referencing *id.* § 404.1509); *id.* § 416.920(a)(4)(ii) (referencing *id.* § 416.909). If the claimant

does not have a severe impairment or combination of impairments that meets the durational requirement, then the claimant is not disabled.  At step three, the ALJ considers whether the claimant's medical impairment or impairments appear on a list maintained by the SSA that identifies and defines impairments that are of sufficient severity as to prevent any gainful activity.  *Id.* §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the claimant's impairment meets or equals one of the listings, then the ALJ will find the claimant disabled.  If not, the ALJ proceeds to step four.  At step four, the ALJ evaluates the claimant's past relevant work and RFC, defined as "the most [the claimant] can still do despite [his] limitations." *Id.* § 404.1545(a)(1); *see id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  Past work is relevant to this analysis if the claimant performed the work within the past five years,[5] the work qualifies as substantial gainful activity, and the work lasted long enough for the claimant to learn how to do it.  *Id.* §§ 404.1560(b)(1)(i), 416.960(b)(1)(i).  If the claimant's RFC permits him to perform past relevant work, he is not disabled.  If a claimant cannot perform past relevant work, the ALJ proceeds to step five and determines whether, in light of his RFC, age, education, and work experience, a claimant can perform other substantial gainful employment.  *Id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

In this case, the ALJ ended her analysis at step four, concluding that in light of the previously described RFC, Plaintiff "is capable of performing past relevant work as a security guard" because that work "does not require the performance of work-related activities precluded by [his] [RFC]." AR at 18.

---

[5] At the time of the ALJ's decision, Section 404.1560(b)(1) provided for a 15-year lookback.  Although not directly relevant in this appeal, the subsequent amendment to five years does not function retroactively, so the Court applies the same version of the rule that the ALJ did.  *See Paulette M. v. Comm'r of the Soc. Sec. Admin.*, No. 23-cv-04668, 2025 WL 383656, at *6 n.5 (E.D.N.Y. Feb. 4, 2025).

B.     *Challenges to the RFC*

The Court now addresses each of Plaintiff's challenges to the ALJ's decision. The Court easily disposes of Plaintiff's challenges, which are set forth in a perfunctory two pages of briefing. *See* ECF No. 8 at 6–7.

i.     Chronic Kidney Disease

Plaintiff first takes issue with the ALJ's decision not to include his chronic kidney disease as a severe impairment at step two. *See* ECF No. 8 at 6. For context, the ALJ provided the following analysis of the kidney disease at that step:

> The record indicates the claimant has a significant history of kidney stones. For longitudinal purposes, the record indicates the claimant was receiving treatment relating to kidney stones in 2007. (16F/15). In recent testing, the claimant had right flank pain and underwent radiographic testing which revealed mild right hydroureteronephrosis, right renal subcapsular collection and bilateral non obstructing renal calculi. Furthermore, the claimant was noted to have kidney stones. (23F). However, there is no indication that the claimant required significant treatment. The record notes the claimant was able to pass kidney stones without surgical intervention on occasion. Additionally, when surgical intervention was discussed with the claimant in June 2021, he opted to wait until after he returned from his vacation and to return for a follow-up visit in September 2021 to discuss further. (16F/202). . . . [T]he record is devoid of any evidence to support that the claimant's . . . chronic kidney disease more than minimally affected the claimant's ability to perform basic work activities.

AR at 12–13. Plaintiff specifically takes issue with the ALJ's conclusion that Plaintiff did not "require[] significant treatment" for the kidney disease. ECF No. 8 at 6. He argues that "the record establishes that [he] suffered [from] chronic kidney stones for several years and require[ed] regular treatment in 2020 and 2021 which necessitated his back surgery be delayed" as well as hospitalization. *Id.* Defendant disagrees and points to various pieces of evidence in support of the ALJ's position. *See* ECF No. 12-1 at 20–23.

6

As it relates to Plaintiff's kidney disease, the ALJ's decision was supported by substantial evidence.[6] At step two, an impairment is severe if it "significantly limits [the claimant's] physical or mental ability to do basic work activities," 20 C.F.R. § 404.1520(c), whereas an impairment is "[n]on-severe . . . if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities," or "the abilities and aptitudes necessary to do most jobs" such as walking, standing, sitting, and lifting, *id.* § 404.1522(a)–(b)(1).  Here, the Court agrees with the ALJ that Plaintiff failed to carry even his *de minimis* burden to show that his kidney disease "significantly limit[ed]" his ability to do "basic work activities."  *See Dione B. v. Comm'r of Soc. Sec.*, No. 20-cv-1745, 2022 WL 1458594, at *3–4 (W.D.N.Y. May 9, 2022).

First, the ALJ acknowledged the relevant medical evidence.  That included evidence from 2007, specifically a CT scan reading showing kidney stones.  *See* AR at 12, 846.[7] But Plaintiff does not explain how that evidence from well before the alleged onset date should inform the step two analysis.  *See Angele J. W. v. Comm'r of Soc. Sec.*, No. 23-cv-00824, 2024 WL 4204301, at *5 (N.D.N.Y. July 24, 2024) ("Medical evidence that predates the alleged disability onset date is ordinarily not relevant to evaluating a claimant's disability."), *report and recommendation adopted*, 2024 WL 4204017 (N.D.N.Y. Sept. 16, 2024).  That concern is

---

[6]  The Court notes that even if Plaintiff were right in his argument on this point, it would not, standing alone, constitute reversible error.  The claimed error was harmless because the ALJ nevertheless considered his kidney stones in the RFC analysis.  AR at 15; *see O'Connell v. Colvin*, 558 F. App'x 63, 65 (2d Cir. 2014) ("Because th[e] condition was considered during the subsequent steps, any error was harmless."); *see also Snyder v. Colvin*, No. 13-cv-585, 2014 WL 3107962, at *5 (N.D.N.Y. July 8, 2014) ("[W]hen functional effects of impairments erroneously determined to be non-severe at Step 2 are, nonetheless, fully considered and factored into subsequent [RFC] assessments, a reviewing court can confidently conclude that the same result would have been reached absent the error.").  In any event, as discussed further below, Plaintiff's argument fails on the merits because the Court deciphers no functional limitations which can be tied to the kidney stones.  *See Snyder*, 2014 WL 3107962, at *5 n.12.

[7]  Some records refer to renal calculi and nephrolithiasis.  Those are terms for kidney stones.  *See Kidney Stones*, Cleveland Clinic, https://perma.cc/HZR6-TSYN (Feb. 26, 2024).

7

especially pronounced here because he does not endeavor to link any pre-onset evidence to the relevant severity inquiry. After all, "the mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment is not, by itself, sufficient to render a condition severe." *Ciara B. v. Comm'r of Soc. Sec.*, 610 F. Supp. 3d 515, 520 (W.D.N.Y. 2022). Such is the case even when such treatment is for a chronic condition, as Plaintiff argues here. *See Dione B.*, 2022 WL 1458594, at *4. In any event, the earlier evidence actually undermines his claim of severity, as Plaintiff was working as an NYPD detective before, during, and after the 2007 scan revealed the kidney stones. *See* AR at 265.

Second, to the extent Plaintiff does try to connect the kidney condition evidence to severity, he misconstrues the record. For the reasons just discussed, his bare argument that he received "regular treatment in 2020 and 2021" fails to satisfy his burden. ECF No. 8 at 6. To be sure, Plaintiff says that treatment required that "his back surgery be delayed." *Id.* And to substantiate that claim, he cites to over 200 pages of the AR without any specification. *Id.* (citing AR at 832–1034). However, the Court has combed through the AR, including the range Plaintiff identifies (the vast majority of which predates the alleged onset date, and only some of which relates to kidney stone treatment), and finds his characterization of the severity of his symptoms lacks evidentiary support. With regard to the delayed back surgery, the Court agrees with Defendant that Plaintiff appears to refer to a disc herniation surgery scheduled for June 12, 2020. *Id.* at 1019. On that day, Plaintiff reported "significant right lower flank pain." *Id.* After a CT scan revealed a kidney stone, *see id.* at 1009, 1019, the surgery was indeed canceled and Plaintiff had chills and a fever the next day, *id.* at 1011, but he stated that his pain "resolved later that day [of the surgery]," he had no additional "constitutional complaints" between then and a subsequent doctor's visit on July 24, 2020, and he believed that he had passed the stone, *id.* at 1019.

Similarly, his other argument that he was "hospitalized for a week in November 2021 due to kidney stones" is not convincing. ECF No. 8 at 6. For one, it is contradicted by the record, which shows that Plaintiff went to the emergency room with abdominal pain on November 6, 2021, AR at 1264–65, and was discharged a few hours later with a diagnosis of kidney stones, *id.* at 1274–75. In any case, that single hospital visit, just like the canceled surgery, fails to demonstrate that Plaintiff's kidney stones significantly limited his ability to do basic work during the relevant time period. *See Rebecca C. v. Kijakazi*, No. 21-cv-1125, 2022 WL 4545846, at *3 (D. Conn. Sept. 29, 2022) (affirming ALJ's finding of non-severity where plaintiff presented evidence of two hospitalizations related to kidney stones but the record did not indicate significant limitations on her ability to work). Plus, as the ALJ observed, additional evidence in the record cuts against Plaintiff on this point. For example, on June 18, 2021, Plaintiff deferred taking further action on his kidney stones until September of that year because he had a vacation in the Bahamas planned for July 2021. AR at 1032–33. In sum, there is more than sufficient evidence in this record to support the ALJ's conclusion regarding the non-severity of the kidney stones, and the Court is therefore required to uphold it. *See Schillo*, 31 F.4th at 74.

    ii.  <u>RFC</u>

Plaintiff also challenges the ALJ's assessment of his "light work" RFC. *See* ECF No. 8 at 6. The Court groups his challenges into two categories. First, he makes a fleeting reference to the ALJ's purported "failure . . . to factor [his kidney stones] into [his] RFC." *Id.* Not so. As an initial matter, the ALJ explicitly mentioned the presence of kidney stones in the RFC analysis. AR at 15. Although that discussion was not detailed, Plaintiff does not try to explain how any limitations associated with the kidney stones should have been incorporated into the RFC. *See Reddy v. Comm'r of the Soc. Sec. Admin.*, No. 23-cv-07947, 2025 WL 21942, at *4 (E.D.N.Y. Jan. 3, 2025) (affirming Commissioner's RFC determination where "[p]laintiff fail[ed] to explain

9

how any evidence in the record actually necessitate[d] . . . off-work time in the RFC"). And in view of the preceding severity discussion, the Court cannot decipher any such error for him.

Second, Plaintiff highlights evidence of "permanent foot drop" as well as "chronic numbness in his big toes, chronic leg spasm, definitive weakness in [the] right foot, an inability to walk on [the] heels o[f] [the] right foot[,] and an antalgic gait." ECF No. 8 at 7.[8] Here, too, he does not clearly articulate how he thinks the ALJ erred—*i.e.*, how she should have further restricted the RFC to account for these impairments. Nevertheless, he argues that "[e]very medical provider who opined on [his] RFC, including various treatment providers and the consultative examiner, indicated he was unable to engage in prolonged standing or walking," suggesting those are the aspects of the RFC he takes issue with. ECF No. 8 at 7. As a reminder, the ALJ found in the RFC that "he can stand and/or walk with normal breaks for a total for both of 6 hours in an 8-hour workday" and "sit with normal breaks" for the same periods. AR at 14.

The Court agrees with the ALJ that Plaintiff's "statements concerning the intensity, persistence[,] and limiting effects of [his] symptoms," including those made before the ALJ and now before this Court, "are not entirely consistent with the medical evidence and other evidence in the record." *Id.* at 15. The ALJ considered the conditions Plaintiff raises here and correctly identified the relevant evidence, including by describing in detail the symptoms that Plaintiff suggests she gave insufficient weight to following his back surgery in June 2020. *See id.* at 15–16. But she also correctly identified countervailing evidence. For example, physical therapy treatment notes from November 2020 indicated that Plaintiff showed improvement despite continued difficulty with walking due to the foot drop. *Id.* at 15 (citing *id.* at 667). By January 2021, he had stopped post-surgery physical therapy and walked with no assistive device and only

---

[8] An antalgic gait is a gait caused by pain, resulting in limping. *See Gait Disorders and Abnormalities*, Cleveland Clinic, https://perma.cc/G8CJ-BHBR (Feb. 22, 2023).

a "mildly antalgic gait." *Id.* (citing *id.* at 750). Notes from a November 2021 "[w]ell visit," *id.* at 1057, reported a normal gait, *id.* at 16 (citing *id.* at 1059). In addition, the ALJ looked at treatment notes from December 2021 indicating that Plaintiff "ha[d] done well since surgery," and even though he experienced "pain in his legs and right ankle . . . after doing strenuous activities," he had completed chiropractic and physical therapy treatments, and was receiving pain management treatment. *Id.* at 15 (citing *id.* at 1132). And the ALJ also pointed to various pieces of evidence indicating that Plaintiff was engaging in activities like light cooking, shopping, showering and dressing himself, and going on vacation in the Bahamas, *id.* at 17 (citing *id.* at 822, 1033). In May 2021, he injured his foot and ankle when he "accidentally fell off of a ladder doing some work at home," *id.* at 809, and in October 2021, reported neck and shoulder pain after vacuuming the pool, *id.* at 17 (citing *id.* at 1151).

Plaintiff also takes issue with the ALJ's assessment of the medical opinions. There are four relevant medical opinions from (1) Drs. Levit and Ahmed, the state agency consultants; (2) Dr. Guariglia, a chiropractor; (3) Dr. Fernandez, the consultative examiner; and (4) Physician Assistant Pulatov. *See id.* at 17–18, 60, 83. As mentioned, Plaintiff argues that "[e]very medical provider . . . indicated [that he] was unable to engage in prolonged standing or walking." ECF No. 8 at 7. Where does that come from? Only PA Pulatov said as much, stating that Plaintiff could "[s]tand/walk" for fewer than two hours per day. AR at 487.[9] Dr. Fernandez was only somewhat closer to that view, stating that Plaintiff had "moderate limitation" in "prolonged standing" or "prolonged walking." *Id.* at 824. And the other medical opinions cannot be reconciled at all with Plaintiff's statement. Drs. Levit and Ahmed both said he could "[s]tand

---

[9]  Notably, Plaintiff does not argue on appeal that this "outlier" opinion, which stated, among other things, that Plaintiff needed to keep his legs elevated at 90 degrees for half of the workday, AR at 487, should have been given greater weight, *Raymond M. v. Comm'r of Soc. Sec.*, No. 19-cv-1313, 2021 WL 706645, at *9 (N.D.N.Y. Feb. 22, 2021). The Court agrees that that opinion is "unpersuasive" for the reasons provided by the ALJ. *See* AR at 18.

11

and/or walk (with normal breaks)" for "[a]bout 6 hours in an 8-hour workday," *id.* at 58, 77, and Dr. Guariglia thought similarly, *id.* at 829.

Finally, Plaintiff claims that the ALJ gave improperly little weight to Dr. Fernandez's opinion. ECF No. 8 at 7. For context, the ALJ found the doctor's "vague opinion" to be "partially unpersuasive" because it was "not stated in function-by-function terms." AR at 17. Plaintiff implies that the ALJ should not have discounted the opinion at all because it was based on the doctor's "entire examination of [him]." ECF No. 8 at 7. In particular, he says it should have been prioritized over the opinions of the state agency consultants, whose opinions the ALJ found "persuasive as [they were] supported by the record," AR at 17, because those doctors did not "actually physically examine[] [him]," ECF No. 8 at 7.

As an initial matter, the Court agrees with Defendant's position that Plaintiff's argument does not prove enough. *See* ECF No. 12-1 at 27. In other words, even had the ALJ fully credited Dr. Fernandez's opinion that Plaintiff had "moderate limitation[s]" as to "prolonged standing" and "prolonged walking," it would not automatically mean that a more restrictive RFC was required. After all, the RFC developed by the ALJ was already quite restrictive, limiting Plaintiff to light work and, as relevant here, to a total of six hours of sitting and standing, with normal breaks, in an eight-hour workday. AR at 14. The Court sees no inconsistency between that RFC and Dr. Fernandez's opinion, even if fully credited. As Judge Matsumoto recently explained, "Courts in the Second Circuit have consistently found that moderate limitations in a plaintiff's ability to perform exertional activities are consistent with an RFC for light work." *See Michalakis v. O'Malley*, No. 21-cv-2697, 2024 WL 1071991, at *10 (E.D.N.Y. Mar. 11, 2024) (collecting cases).

In any case, substantial evidence supported some discounting of Dr. Fernandez's opinion. *See Schillo*, 31 F.4th at 77–78. In doing this assessment, the ALJ was required to "consider[]

12

[its] persuasiveness . . . using the factors listed in [20 C.F.R.] § 404.1520c(c)(1)–(5)." *Rubin v. O'Malley*, 116 F.4th 145, 148 (2d Cir. 2024). Those factors are supportability, consistency, relationship with the claimant, specialization, and "other factors that tend to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. § 404.1520c(c)(1)–(5). "[S]upportability and consistency are the most important, and the Commissioner must therefore explain how he considered supportability and consistency as applied to [the] medical source's opinion in his determination or decision." *Rubin*, 116 F.4th at 148.

Although an explicit discussion of supportability and consistency was lacking here, *see* AR at 17, "a searching review of the record assures the [C]ourt that the substance of the regulation was not traversed." *See John L. M. v. Kijakazi*, No. 21-cv-368, 2022 WL 3500187, at *2 (N.D.N.Y. Aug. 18, 2022) (citing *Loucks v. Kijakazi*, No. 21-1749, 2022 WL 2189293, at *2 (2d Cir. June 17, 2022)). Importantly, as Defendant notes, *see* ECF No. 12-1 at 27–28, the ALJ found Dr. Fernandez's position only "partially unpersuasive," AR at 17.[10] That assessment to mostly credit the opinion necessarily reflected an assessment of supportability, 20 C.F.R. § 404.1520c(c)(1), because Dr. Fernandez presented "objective medical evidence"—he referred to many of the same issues like back pain and gait also discussed by the ALJ, *see* AR at 821–22—and his "supporting explanations" tracked that evidence, albeit at a level of generality so as to render them somewhat "vague," *see id.* at 17. The ALJ's decision also necessarily demonstrated an assessment of consistency, as Dr. Fernandez's opinion was largely consistent with those of Drs. Levit, Ahmed, and Guariglia, even if its ultimate persuasiveness was partially

---

[10] The ALJ included many aspects of Dr. Fernandez's opinion in the RFC, such as not performing push or pull operations with his right lower extremity. *Compare* AR at 824 (opining that Plaintiff should avoid activities requiring foot control), *with id.* at 14 (excluding such activities from the RFC). Her discounting of the opinion reflects a balanced treatment of the opinion. *See Pellam v. Astrue*, 508 F. App'x 87, 90 (2d Cir. 2013) (affirming where "even if the ALJ did not credit all of [the consultative examiner]'s findings, [the consultative examiner]'s medical opinion largely supported the ALJ's assessment of [the claimant]'s [RFC]").

13

undercut by its failure, unlike with those other doctors, to give a "function-by-function" assessment. *Id.* The qualified assessment was supported by substantial evidence. *See Pellam*, 508 F. App'x at 90 (not adopting "relatively vague" ultimate conclusions in medical opinion supported by substantial evidence).

The Court also rejects Plaintiff's argument that the ALJ should have prioritized Dr. Fernandez's opinion over the state agency consultants' opinions because he "actually physically examined [Plaintiff]." ECF No. 8 at 7. As is now well-established, there is no longer a "hierarchy of medical sources" in Social Security cases and "the ALJ [does] not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion." *Colgan*, 22 F.4th at 365 (citing 20 C.F.R. § 404.1520c(a)). Plaintiff does not even try to explain why Dr. Fernandez's one-time examination of Plaintiff necessarily rendered his opinion more persuasive than any other opinion, especially in light of the ALJ's findings concerning the persuasiveness of the state agency consultants' opinions. *See Douglas C. v. Comm'r of Soc. Sec.*, 717 F. Supp. 3d 289, 298 (W.D.N.Y. 2024) (where plaintiff objected to the weighing of the medical opinions on the basis that "none of the[] doctors conducted an in-person examination," rejecting the "blanket assertion that it was error for the ALJ to rely on the opinions of non-examining medical consultants"). And again, it is worth reiterating that Plaintiff still does not explain how giving additional weight to Dr. Fernandez's opinion would have mandated a more restrictive RFC. In particular, the Court notes that, as previously discussed, the state agency consultants provided the same standing and walking limitations as Dr. Guariglia, who actually treated Plaintiff between November 2020 and May 2021. *See* AR at 816–19.

## **CONCLUSION**

In this case, the ALJ's decision was amply supported by substantial evidence. Accordingly, Plaintiff's motion for judgment on the pleadings is denied, Defendant's motion is

granted, and the Commissioner's decision is affirmed.  The Clerk of Court is respectfully directed to enter judgment consistent with this decision and to close this case.

SO ORDERED.

                                                       */s/ Hector Gonzalez*
                                                      HECTOR GONZALEZ
                                                      United States District Judge

Dated: Brooklyn, New York
        March 11, 2025